# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

MELVIN HUDNALL,

    Plaintiff,

v.

JIM PAYNE, et al.,

    Defendants.

Case No. 13-cv-04728-WHO

**ORDER GRANTING MOTIONS TO DISMISS**

Pro se plaintiff Melvin Hudnall brings this action against defendants Jim Payne, Alfred C. Glassell III, Charles C. Dickerson, Guy Griffin, and Ralph E. Allen, alleging that the defendants deprived him of certain benefits owed to him through the "Hamp Williams Living Trust." The defendants separately moved to dismiss for lack of personal jurisdiction or venue.[1] Dickerson and Griffin also alternatively move that the Court transfer the case to the Eastern District of Texas.

Based on the pleadings, the parties' briefs and declarations, and argument of counsel, the Court concludes that it lacks personal jurisdiction over the defendants and GRANTS the motions to dismiss. Transfer to a federal district court in Texas where the court would likely have personal jurisdiction seems appropriate. Dickerson and Griffin suggest that the Tyler Division of the Eastern District of Texas is the proper venue. While Glassell and Payne argue that the Court is not the appropriate venue, they and Allen did not discuss transfer.

The plaintiff and non-judicial defendants are ORDERED to file briefs of no more than three pages by February 13, 2014, suggesting which federal district court and division in Texas would be the appropriate venue. The defendants may file joint or separate briefs. If the plaintiff

---

[1] Defendants Charles C. Dickerson and Guy Griffin, both judges, filed a joint motion to dismiss. The remaining defendants each filed individual motions to dismiss.

1 would prefer that this case be dismissed instead of transferred, he should make that preference

2 known. The Court will then rule on the issue of transfer.

## FACTUAL BACKGROUND

The plaintiff alleges the following facts in his Complaint:

Plaintiff Melvin Hudnall, a California resident, is a beneficiary of the Hamp Williams Trust. Compl. ¶ 6. Defendant Jim Payne, "an individual with a principal place of business" in Carthage, Texas, is the trustee of the Hamp Williams Trust and President of First State Bank & Trust. Compl. ¶ 7. Defendant Alfred C. Glassell III is a "Producer" with Glassell Producing, which has its principal place of business in Houston, Texas. Compl. ¶ 8. Defendant Charles C. Dickerson is a district judge for Panola County, "with a principal place of business" in Carthage, Texas.[2] Compl. ¶ 9. Defendant Guy Griffin is the former presiding district judge in Panola County, "with a principle [sic] place of business" in Texas.[3] Compl. ¶ 10. Defendant Ralph E. Allen" has "a principle [sic] place of business" in Tyler, Texas. Compl. ¶11.

Hudnall is a great-grandson of Hamp Williams, the owner of over 9,000 acres in east Texas. Compl. ¶ 12. The land is rich with oil, natural gas, and minerals, and was placed in trust by Williams. Compl. ¶ 12. The administrators of the trust have not made distributions to the beneficiaries of the trust, including Hudnall, as required. Hudnall presented himself to "First State Banks & Trust Co." to claim the $35,472.699.88 that he inherited through the trust. Compl. ¶ 12 (citing Compl. Ex. A). Neither the trust administrators nor the defendants have honored his requests. Compl. ¶ 12.

The trust contains land described as "Mary S. Potts Headright Survey Abstract 922, 512 Acres more or less from the Moses Shook Survey, W.C. Gray Survey, W.X. Martin Survey, O.E. Jones Headright Survey." Compl. ¶ 13 (citing Compl. Ex. C.). The trust consist of an "undetermined" number of businesses owned by the trust, "possibly more than 500+ Business with an estimated value that could exceed 150 Billion dollars, interest not withstanding [sic]." Compl. ¶ 13. The Glassell Family's trust has made conflicting claims to the same land owned by

---

[2] The Court construes this to mean that Judge Dickerson is a resident of Texas.
[3] The Court construes this to mean that Judge Griffin is a resident of Texas.

2

Williams. Compl. ¶ 12 (citing Compl. Ex. B). But no one disputes Hudnall's rights as a beneficiary. Compl. ¶ 12.

Hudnall accuses the defendants of various wrongdoing related to the Hamp Williams Trust. Hudnall alleges that Payne, as the trustee of the Hamp Williams Trust and President of First State Bank & Trust, ignored his fiduciary duty to the trust and its beneficiaries for his own personal enrichment. Compl. ¶ 15. He failed to provide periodic accountings to the beneficiaries of the trust. Compl. ¶ 16. Hudnall alleges that Glassell "has direct acquiescence" that his grandfather created an unlawful trust called The Carthage Unit, which apparently made wrongful conflicting claims with the Hamp Williams Trust. Compl. ¶ 20. Hudnall accuses Judges Dickerson and Griffin of constructive fraud, presumably in refusing to recognize Hudnall's rights in the Hamp Williams Trust. Compl. ¶¶ 23, 27. They also violated "federal and state codes of conduct" sections one through six. Compl. ¶¶ 24-25, 28. Hudnall alleges that Allen, "the last known attorney of record for the 'Hamp Williams' Beneficiaries" maintains the "Hudnall file," but wrongfully refuses to return the file despite requests to do so. Compl. ¶ 32 (citing Compl. Ex. F).

Hudnall asserts that the Court has personal jurisdiction over the defendants because they have "deliberate substantial, continuous, and systematic contact in the State of California through businesses owned by 'The Hamp Williams Trust' among other things, defendants['] continuous obligation to the 'Irrevocable Trust Beneficiary' wherein plaintiff currently maintains a principle [sic] place of residence in California." Compl. ¶ 5.

The First Cause of Action is for breach of fiduciary duty against Payne for failing his duties of loyalty and good faith in administering the Hamp Williams Trust. Compl. ¶¶ 35-43. The Second Cause of Action is for fraud and constructive fraud against all defendants for making deceptive material misrepresentations or for remaining silent given a duty to speak. Compl. ¶¶ 46-48. The Third Cause of Action is for violation of Uniform Trust Codes against Payne for numerous failures as trustee of the Hamp Williams Trust. Compl. ¶¶ 49-58. The Fourth Cause of Action is for conflict of interest against Payne, who acted in potentially conflicting roles as a lender, credit enhancer, security underwriter, etc. Compl. ¶¶ 59-60. The Fifth Cause of Action is for violation of Codes of Conduct against Dickerson and Griffin for failing in their obligations as

judges. Compl. ¶¶ 60-71. The Sixth Cause of Action is for violation of the Professional Codes of Conduct against Allen for having conflicts of interests. Compl. ¶¶ 72-76.

Hudnall seeks compensatory damages of $35,472,699.88 and punitive damages, as well as injunctive relief and appointment of a conservator over the trust. Compl. 21.

**PROCEDURAL BACKGROUND**

Hudnall filed this complaint on October 10, 2013. Except for Dickerson and Griffin, the defendants filed separate motions to dismiss. Dkt. Nos. 12, 15, 27 & 35. Hudnall filed opposition briefs to all motions except for Dickerson and Griffin's motion, and the other defendants filed reply briefs. The Court heard argument on January 29, 2014.

**LEGAL STANDARD**

A court's jurisdiction to render judgment against a person depends on the court's having personal jurisdiction against that person. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citations omitted). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993) (citation omitted). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.*; CAL. CIV. PROC. CODE § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

"There are two types of personal jurisdiction: general and specific." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "[G]eneral jurisdiction permits a

defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. It exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Such contacts must "be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

In the absence of general jurisdiction, a nonresident defendant may be sued in the forum if specific jurisdiction exists. *Id.* "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002); *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a defendant:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

The first prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802. But courts often refer to both analyses as "purposeful availment." *Id.* The alleged actions must be "expressly aimed" at the forum state based upon an analysis of "the totality of the circumstances surrounding the events." *Core-Vent*, 11 F.3d at

5

1485-86. "The 'quality and nature' of an interstate transaction may sometimes be so 'random,' 'fortuitous,' or 'attenuated' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (citations omitted). "[O]rdinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (citations, quotation marks, and brackets omitted).

With regard to the second prong, courts "measure this requirement in terms of 'but for' causation." *Bancroft & Masters*, 223 F.3d at 1088.

The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. *Id.* If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction does not comport with "fair play and substantial justice" and would be unreasonable. *Id.* Whether the exercise of jurisdiction comports with "fair play and substantial justice" depends on seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent*, 11 F.3d at 1487-88.

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger*, 374 F.3d at 800. "In considering a motion to dismiss for lack of personal jurisdiction, the plaintiff must present admissible evidence to support the court's exercise of personal jurisdiction, and the court cannot assume the truth of allegations in the pleading unless such allegations are uncontroverted." *Hancock v. Hitt*, No. 98-cv-960-MMC, 1998 WL 345392, at *2 (N.D. Cal. June 19, 1998); *see also Schwarzenegger*, 374 F.3d at 800

("Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true."). "Where . . . the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, [the court] only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (internal punctuation and citation omitted). However, "If only one side of the conflict was supported by affidavit, [the court's] task would be relatively easy, for [it] may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc*, 557 F.2d at 1284. A court may reject an affidavit or declaration that is "inherently incredible" if it "can be so characterized solely by a reading of the affidavit." *Id.* "[T]he court need not assume the truth of mere conclusory allegations." *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. 05-cv-1793-JW, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005) (citing *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999)). Otherwise, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

The court may, but need not, allow discovery on jurisdictional issues and hold an evidentiary hearing, at which the plaintiff must carry his burden by a preponderance of the evidence. *Data Disc*, 557 F.2d at 1285. Jurisdictional discovery "may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc*, 557 F.2d at 1285 n.1 (citation omitted). "In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Id.* Where plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction," "[t]his speculation does not satisfy the requirement that they make 'the clearest showing' of actual and substantial prejudice." *Butcher's Union Local No. 498, United Food & Comm'l Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). The same

is true of a request for discovery "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (brackets and ellipses omitted).

**DISCUSSION**

Hudnall fails to establish any basis for a federal court in California to assert jurisdiction over the defendants. As described below with respect to each defendant, the alleged wrongful conduct occurred in Texas, the property in dispute is in Texas, each of the defendants is a Texas resident, and none of the defendants has substantial contacts with California or has purposefully availed himself of doing business here.

**I.   THE COURT LACKS PERSONAL JURISDICTION OVER ALLEN.**

Hudnall alleges that Allen was the attorney for the Hamp Williams Trust's beneficiaries. Allen is a resident of Tyler, Texas, and has lived in Texas for at least 34 years. Allen Br. Decl. (Dkt. No. 27) ¶ 2. Allen asserts that he is a real estate attorney who "perform[s] legal services solely in the state of Texas." Allen Br. Decl. ¶ 3. He has never owned real property in California, done or solicited business in California, or been in California for 10 years. Allen Br. Decl. ¶¶ 4-5. While he concedes that he may have purchased consumer products made in or sold from California, or may have had clients from California, he only receives deliveries in Texas and interacts with clients in Texas. Allen Br. Decl. ¶¶ 6-7. He is not licensed to practice in California, has no business interests in California, and has never been in a contractual relationship with Hudnall or provided him legal services. Allen Br. Decl. ¶ 3. He has never filed a lawsuit, been attorney of record, or been hired for "Hamp Williams' Beneficiaries." Allen Br. Decl. ¶ 3. In December 2012, Hudnall sent Allen a letter demanding that Allen turn over documents that had been provided by one of Allen's clients (who is not a party to this action), but Allen refused based on the professional rules of conduct. Allen Br. Decl. ¶ 3.

Hudnall generally alleges that "defendant Ralph Allen as set forth above has committed

specific acts direct towards plaintiff and the his [sic] forum state of choice California." Allen Opp'n 7. Hudnall's specific allegations, made in his opposition brief but not the complaint, are that Hudnall has been trying to obtain "the family file" which he and his brothers "previously developed over many years through research and investigation into the subject matters currently pending" before the Court. Allen Opp'n 3. He asserts that his brother, exercising power of attorney for "all the Beneficiaries," retained Allen to represent the Hudnall Family Beneficiaries, and Allen knew that the Hudnalls lived in California and Texas. Allen Opp'n (Dkt. No. 55) 3. Hudnall contends that the Court should exercise specific jurisdiction over Allen because he was retained by Hudnall and has represented Sue Perillouix, Hudnall's sister-in-law and a California resident, with whom Allen has maintained contact and provided portions of the "Hamp Williams Trust Family File." Allen Opp'n 4-5. Allen also maintains a website. Allen Opp'n 5.

Hudnall fails to carry his burden of showing that the Court may exercise personal jurisdiction—general or specific—over Allen. Hudnall does not plead sufficient facts showing that Allen had activities within California that are "substantial" or "continuous and systematic," *Data Disc*, 557 F.2d 1287, or "of the sort that approximate physical presence," *Bancroft & Masters*, 223 F.3d 1086. Aside from certain alleged contacts with California residents made in the opposition brief, there is no evidence of continued or persistent contact with the forum. Hudnall therefore fails to establish general jurisdiction over Allen.

Similarly, Hudnall fails to plead sufficient facts showing that Allen "purposefully directed" any activities at California that give rise to Hudnall's claims such that the Court may exercise specific jurisdiction over Allen. *Schwarzenegger*, 374 F.3d at 802. The complaint is bereft of any facts linking Allen to California. Assuming for the moment the truth of all of Hudnall's allegations related to Allen, from the allegation that Allen refused to turn over certain files to the allegation that Allen represented Hudnall's sister-in-law, they do not show purposeful direction towards California giving rise to the relevant claims. And the Court is unwilling to assume the truth of Hudnall's unsworn allegations in his brief because they are contradicted by Allen's sworn declaration. Allen states that he has never "solicited business" in California, and though Allen has clients "who may have been from California," he was hired while he was in Texas "to handle

matters located in Texas and [those clients] would have made their payments to [Allen] in Texas." Allen Decl. ¶¶ 5, 7. Allen declares that he has never rendered legal services to, or been in a contractual relationship with, Hudnall or performed legal services for "Hamp Williams' Beneficiaries." Allen Decl. ¶ 3. Because the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc*, 557 F.2d at 1284, based on Allen's declaration which controverts facts proffered by Hudnall, Hudnall has not carried his burden of proving specific jurisdiction.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER DICKERSON AND GRIFFIN.

The plaintiff has not filed an opposition to Dickerson and Griffin's (the "judges") motion to dismiss. On January 16, 2014, Hudnall filed a "Petition for Leave to Dismiss Selective Defendant's [sic] Without Prejudice to Re-file Upon Amended Complaint and Attached Order." Dkt. No. 64. Hudnall appears to be moving that the Court dismiss the judges from the action without prejudice. However, given the Court's conclusion that it lacks personal jurisdiction over the judges, as explained below, Hudnall's motion is DENIED AS MOOT.

The judges argue that the Court lacks personal jurisdiction—both general and specific—over them. Judges Br. 5. All allegations against the judges are about their presiding over a court in Panola County, Texas. There is no relation to California and to Hudnall's claims. Judges Br. 6.

The judges are correct. The complaint contains no allegations that the judges engaged in activities within California that are "substantial" or "continuous and systematic," *Data Disc*, 557 F.2d 1287, or "of the sort that approximate physical presence," *Bancroft & Masters*, 223 F.3d 1086. Hudnall therefore fails to establish general jurisdiction over the judges. Similarly, Hudnall fails to plead sufficient facts showing that the judges "purposefully directed" any activities at California that give rise to Hudnall's claim such that the court may exercise specific jurisdiction over them. *Schwarzenegger*, 374 F.3d at 802. Rather, Hudnall's allegations are limited to their alleged fraudulent acts and violations of unspecified codes of conduct in their judicial capacities as Texas state judges in proceedings in Texas. There is no connection to California, so Hudnall fails

to establish specific jurisdiction over the judges.[4]

## III. THE COURT LACKS PERSONAL JURISDICTION OVER PAYNE.

Hudnall fails to carry his burden of showing that the Court may exercise general jurisdiction over Payne, the president of First State Bank & Trust and alleged trustee of the Hamp Williams Trust. Hudnall's sole allegation in support of general jurisdiction is a single conclusory statement that "defendants have deliberate substantial, continuous, and systematic contact in the State of California through businesses owned by 'The Hamp Williams Trust' among other things, defendants continuous obligation to the 'Irrevocable Trust Beneficiary' wherein plaintiff currently maintains a principle [sic] place of residence in California." Compl. ¶ 5. However, this legal conclusion is contradicted by Payne's declaration stating that he has always been a resident of Texas and has never lived in California, has never owned real property or been employed in California, has never spent more than 10 days in California during the past five years, and has no continuous or systematic business dealings with California. Payne Br. Decl. ¶¶ 2-7. The First State Bank & Trust Co. is located exclusively in Texas, and Payne has not made any business trips to California over the past 10 years. Payne Br. Decl. ¶ 7. "In case after case, when an individual conducts business that requires their occasional presence in a state, courts have not found sufficient contact for general jurisdiction." *Span Const. & Eng'g, Inc. v. Stephens*, No. 06-cv-286, 2006 WL 1883391, at *6 (E.D. Cal. July 7, 2006).

Hudnall also fails to carry his burden of showing specific jurisdiction over Payne.[5] Hudnall does not cite any instances in which Payne has directed actions into California in any manner that relates to Hudnall, Hudnall's purported injury, or the Hamp Williams Trust or estate. Everything alleged is located or occurred in Texas. Payne Br. 1-2. Except for the single instance of responding to demand letters Hudnall sent to Payne, Payne asserts that he has had no contacts

---

[4] The judges also moved to dismiss based on judicial immunity, Eleventh Amendment and sovereign immunity, the *Rooker-Feldman* doctrine, and lack of subject matter jurisdiction. Because the Court concludes that it lacks personal jurisdiction over the judges, there is no need to discuss these alternative grounds.

[5] In his opposition brief, Hudnall appears to concede that the Court lacks personal jurisdiction over Payne, stating, "plaintiff cannot point to defendant having 'minimum contacts['] with California or that he has personally availed himself to the benefits of the forum state of California within the meaning of California's Long Arm Statute with respect to personal jurisdiction." Payne Opp'n 2.

or dealings in California with Hudnall. Payne Br. 2.

Because Hudnall's allegations sound in tort, to satisfy the first prong of the test for specific jurisdiction Hudnall must allege that Payne committed intentional acts "expressly aimed" at California, *Schwarzenegger*, 374 F.3d at 803. But Hudnall only alleges that Payne breached his duties as a fiduciary, trustee, or administrator of trust property located in Texas. Indeed, Payne states in his affidavit that he is not aware of any trust relating to the estate of Hamp Williams and does not serve as a trustee or administrator for any of the alleged property or assets. Payne Br. Decl. ¶ 9. With the sole exception of responding to demand letters from Hudnall, Payne declares that he has not had any California-related dealings with Hudnall. Payne Br. Decl. ¶ 8. Nor has Hudnall shown that Payne caused any harm that Payne knew was likely to be suffered in California. Since Hudnall fails to show that Payne engaged in any conduct directed towards California, he also fails to show that "but for" such conduct the alleged injury would not have occurred, as required by the second prong of the test for specific jurisdiction. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Hudnall's opposition brief makes numerous factual allegations, many of which do not appear in the complaint. *See* Payne Opp'n 2-7. None of those facts show that the Court has personal jurisdiction over Payne. For example, Hudnall claims that in April 1999, he sent a letter to Payne asking for copies of the trust documents, and also filed complaints with the Federal Deposit Insurance Corporation and "Texas Banking Association."[6] Payne Opp'n 5-6. Based on the documents provided, the Texas Department of Banking referred Hudnall's letter of complaint to Payne on April 14, 1999, asking Payne to "address his concerns and [to] provide a copy of [the] response to this department." Payne Opp'n Ex. K. Hudnall claims that the "Texas Banking Association" "found violations" (though Hudnall does not explain what violations were found or provide any evidence to support his claim). Payne Opp'n 6. On April 19, 1999, Payne appears to have responded to the letter of complaint forwarded by the Department of Banking. Payne Opp'n Ex. L.

---

[6] Hudnall appears to be referring to the Texas Department of Banking. Payne Opp'n Ex. K.

Although Hudnall's discussion about the letter ends at this point, the Court assumes that Hudnall means to suggest that the sending of the letter constitutes an activity directed at California sufficient to establish personal jurisdiction over Payne. Payne did send a letter to California. (The letter is not addressed to the plaintiff, but to a Douglas Hudnall, who plaintiff does not identify, but who appears to have been the one that actually complained to the Department of Banking, contrary to plaintiff's assertion.) A nearly 15 year-old letter sent in response to an inquiry is insufficient to establish personal jurisdiction over the defendant. *See Yahoo!*, 433 F.3d at 1209. "Ordinarily, letters and telephone calls fall short of purposeful activity invoking the benefits and protection of the forum state." *Rudgroden v. State Bank of Park Rapids*, No. 08-cv-964-JF, 2008 WL 4542971, at *2 (N.D. Cal. Oct. 1, 2008) (citing *Peterson*, 771 F.2d at 1262). Payne's sending of the letter to Douglas Hudnall does not show that Payne "committed an intentional act . . . expressly aimed at the forum state" that caused the harm in California of which Hudnall complains, as he must. *Schwarzenegger*, 374 F.3d at 803. While the letter appears to reference a trust related to Hamp Williams, Hudnall fails to explain how Payne's response to an inquiry from Douglas Hudnall constitutes purposeful activity towards California that caused Hudnall's alleged injury.

Among other facts newly raised in his opposition brief, but not the complaint, Hudnall claims that Payne "bought" documents, including "land deeds, trust instrument excreta [sic]," from the Panola County Clerk's Office to conceal them and, by doing so, committed "a deliberate tortious act directed at having a harming effect upon plaintiff in the forum state." Payne Opp'n 6-7. Hudnall does not explain how or why those alleged actions were "expressly aimed" at California, so even if they are true, the purchase and concealment of documents in Texas would not establish personal jurisdiction in California. *See Core-Vent*, 11 F.3d at 1485-86. This uncorroborated assertion in Hudnall's opposition brief, based on compound hearsay, is controverted by Payne's sworn declaration that he never purchased any such documents. Payne Reply Decl. ¶ 4. Against this declaration, the Court will not credit the factual basis for Hudnall's claim.

Hudnall cites a significant amount of law discussing the alter-ego doctrine in corporate

13

law, which allows for "piercing the corporate veil." Payne Opp'n 10. Hudnall argues that Western Mutual Insurance Group, which allegedly has offices in Irvine, California, "appears to be an [sic] division or affiliate or acting as agents [sic] of Carthage Bancshares Inc.," "which wholly owns and operates" First State Bank & Trust. Payne Opp'n 13. Hudnall does not explain how this web of relations establishes personal jurisdiction over Payne or provides a plausible ground for further discovery. Presumably, Hudnall means to say that because Western Mutual Insurance Group is subject to personal jurisdiction in California due to its physical presence in the forum, and it shares a parent with First State Bank and Trust in Carthage Bancshares Inc., Payne—as the President of First State Bank & Trust—is also subject to personal jurisdiction in California. Hudnall admits that "[a]t this point, the record is not yet clear nor developed enough to determine what the specific relationship [between these entities are], or [what] role they play without discovery being granted." Payne Opp'n 13. Nonetheless, he asserts that "Plaintiff has offered sufficient evidence of personal jurisdiction to allow discovery to proceed." Payne Opp'n 13.

Hudnall is wrong. "It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes" except "where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* (internal punctuation omitted). "To satisfy the agency test, the plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services." *Id.* at 1135.

Hudnall has provided no credible evidence that Western Mutual Insurance Group's presence in California allows the Court to extend personal jurisdiction over Payne. While Payne states that he is an officer and director of Carthage *State* Bancshares, Inc. (which the Court

14

assumes Hudnall has confused with Carthage Bancshares, Inc.[7]), Payne Reply Decl. ¶ 7 (emphasis added), Hudnall does not explain the basis for his assertion that Western Mutual Insurance Group is a "division or affiliate" of, or is "acting as agents [sic]" for Carthage State Bancshares, Inc. Without doing so, the Court cannot presume that whatever jurisdiction it might have over Western Mutual Insurance Group can be asserted over its alleged parent because Hudnall has provided no facts to show a unity of interest such that the two entities no longer exist independently or that to disregard their separate identities would lead to fraud or injustice. Similarly, Hudnall has provided no facts to show that Western Mutual Insurance Group was "either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself" such that they were in an agency relationship. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 n.9 (9th Cir. 1994).

Of course, Hudnall's attempts to show these entities' contacts with California—if they have any foundation at all—do not establish personal jurisdiction over Payne because the actions of his employer do not provide an automatic basis for doing so. Individuals' "contacts with California are not to be judged according to their employer's activities there." *Calder*, 465 U.S. at 790. While "their status as employees does not somehow insulate them from jurisdiction," *id.*, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Rather, a plaintiff must show that "a corporate employee is the moving, active, conscious force behind the [wrongful] activity." *Matsunoki Grp., Inc. v. Timberwork Or., Inc.*, 08-cv-4078-CW, 2009 WL 1033818, at *3 (N.D. Cal. Apr. 16, 2009). As explained above, Hudnall has not shown what wrongful activity Payne has directed at California, whether in an individual or corporate capacity. Accordingly, Hudnall fails to carry his burden of showing that the Court may exercise specific jurisdiction over Payne.

---

[7] Payne acknowledges that a Carthage Bancshares, Inc., exists, but states that Carthage State Bancshares, Inc., is not a successor to or affiliated with it. Payne Reply Decl. ¶ 9.

15

### IV. THE COURT LACKS PERSONAL JURISDICTION OVER GLASSELL.

Glassell is the president of Glassell Producing Company and an alleged beneficiary of the Glassell family trust. The sole cause of action against Glassell is for fraud and constructive fraud for making deceptive material misrepresentations. Compl. ¶¶ 46-48. Hudnall alleges that Glassell had some duty to the beneficiaries of the Hamp Williams Trust and made "deceptive material misrepresentations of past or existing facts and [ ] remain[ ] silent when a duty exists to speak." Compl. ¶ 46. In particular, he has "chosen to remain silent concerning an illegal trust herein known as the 'TCU' that was established so that the original trust instrument could be ignored and original deed would not have to be produced at the time of request and granting of permission to extract oil and natural gas from the rightful owners of the land and trust beneficiaries." Compl. ¶ 47.

Hudnall fails to carry his burden of showing that the Court may exercise general jurisdiction over Glassell. The complaint is devoid of any allegation connecting Glassell to California. Hudnall makes a single conclusory statement that "defendants have deliberate substantial, continuous, and systematic contact in the State of California through businesses owned by 'The Hamp Williams Trust' among other things." Compl. ¶ 5. However, the plaintiff fails to distinguish between the defendants and, more importantly, fails to provide any facts to support his assertion.

On the other hand, by declaration Glassell has provided substantial evidence that he lacks sufficient contacts with California for the Court to exercise personal jurisdiction over him, general or specific. He has never lived or worked in California, and has not visited California in the last 10 years except once for vacation; rather, he lives, works, votes, and pays taxes in Texas. Glassell Br. Decl. ¶¶ 2-5. He is the president of Glassell Producing Company, which operates exclusively in Texas and does not own or lease property in California or contract with California companies. Glassell Br. Decl. ¶ 3. Based on the uncontroverted affidavit submitted by Glassell, there is no basis for general jurisdiction over him given his limited contacts with California.[8]

---

[8] In a section entitled "Summary Of Facts," Hudnall states that he "controverts" Glassell's declaration, apparently as a whole, but points to no facts of his own to show that the Court may

United States District Court
Northern District of California

1    Similarly, Hudnall fails to plead sufficient facts showing that Glassell "purposefully

2 directed" any activities at California that give rise to Hudnall's claim such that the Court may

3 exercise specific jurisdiction over Glassell. *Schwarzenegger*, 374 F.3d at 802. While Hudnall

4 claims that Glassell made certain material misrepresentations or failed to speak despite a duty to

5 do so, Hudnall pleads no facts showing that Glassell purposefully directed his alleged wrongdoing

6 towards California, as he must since the purported misrepresentations or omissions sound in tort.

7 The alleged trust is in Texas and involves Texas property, and Hudnall provides no evidence that

8 any of Glassell's alleged actions "individually targeted" Hudnall in California despite whatever

9 harm he might have felt, but he must do so to "demonstrate the purposeful availment necessary for

10 an exercise of specific jurisdiction." *Bancroft & Masters*, 223 F.3d at 1088. Similarly, Hudnall

11 fails to show that "but for" Glassell's forum-related activities, he would not have suffered the

12 harm he alleges. *Id.* Because Hudnall fails to establish the first two prongs of the three-part test

13 for specific jurisdiction, there is no need to assess whether exercising jurisdiction over Glassell

14 would "comport with fair play and substantial justice" or be unreasonable. *Schwarzenegger*, 374

15 F.3d at 802.

16    In his opposition brief responding to Glassell's motion to dismiss, Hudnall cites facts that

17 were not alleged in his complaint and that are unsubstantiated at best and irrelevant at worst. For

18 example, he appears to claim that he is a nephew of Alfred Glassell, Jr. (and is therefore,

19 presumably, a cousin of defendant Glassell, though he does not say so). Glassell Opp'n 2. He

20 also makes numerous statements about records in the "County Clerks Office of Records in Panola

21 County" and about the history of various entities, but provides no evidence or documents to

22 support his assertions. *See, e.g.*, Glassell Opp'n 3, 5-7. The Court has reviewed all of these

23 claims, but fails to see any relevance to the jurisdictional issue at hand.

24    At one point in his opposition brief, Hudnall claims that "Alfred C. Glassell III visited one

---

exercise personal jurisdiction over Glassell. While "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," *Schwarzenegger*, 374 F.3d at 800, Hudnall has provided no affidavit or declaration to show that the Court may properly exercise personal jurisdiction over Glassell based on any act he committed.

17

known Valero retail site located in San Jose, CA . . . within the past ten years."[9] Glassell Opp'n 7 n.3. Glassell's declaration contradicts this: Glassell has only visited California once in the past 10 years "for vacation . . . not related to the subject matter of this litigation." Glassell Br. Decl. ¶ 6. If Hudnall is right, it does not matter. A visit to a gas station neithr relates to the harm alleged nor subjects Glassell to specific jurisdiction in California.

As he did with Payne, Hudnall appears to premise personal jurisdiction over Glassell based on business entities with which Glassell is affiliated. Hudnall claims that "Glassell Producing Company was created by Alfred Glassell Jr., [and] presently it is run by his son Alfred C. Glassell III, and subsidiaries known and doing business as, ERSO-Carthage Corporation." Glassell Opp'n 8. Hudnall appears to be claiming that Glassell Producing Company "continues to operate as Enron Creditors Recovery Corporation in numerous states, including, California." Glassell Opp'n 6. In addition, he asserts that the company "houses Gas producing Companies such as ***Valero Energy Corp***., (Magnolia Oil) ***Exxon Mobil***, Unocal, Conoco Phillips, ***Cabo Blanco***, ***Wells Fargo Services Co***. doing business in California . . . ." Glassell Opp'n 6 (original emphases). Hudnall does not explain how any of these alleged subsidiaries' contacts with California can be transferred to Glassell Producing Company since, as noted earlier, "[i]t is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes."[10] *Harris Rutsky & Co.*, 328 F.3d at 1134. More importantly, he does not explain how any of the subsidiaries' contacts relate to the alleged wrongdoing in this action or how those contacts would implicate Glassell.

## CONCLUSION

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the Court may exercise general or specific jurisdiction over the defendant. Hudnall

---

[9] Hudnall also claims to have visited Glassell in 1988 at "the offices of Glassell Producing Co." Glassell Opp'n 7 n.3. Glassell states in his declaration that he has never met or spoken with the plaintiff. Glassell Br. Decl. ¶ 8. Even if Hudnall's claim is true, Hudnall does not explain how a 25 year-old meeting in Texas, where Glassell Producing Company's offices are located, Glassell Br. Decl. ¶ 3, establishes personal jurisdiction over Glassell in California.

[10] Although Hudnall cites cases discussing the issue, he does not appear to argue that any of these entities "is the parent's alter ego" or "acts as the general agent of the parent" such that the corporate form should be disregarded. *Harris Rutsky & Co.*, 328 F.3d at 1134.

18

fails to provide any facts in his pleadings or to submit affidavits or declarations to show that the Court has personal jurisdiction over the defendants.  Although Hudnall requests that the Court grant jurisdictional discovery, because his bases for personal jurisdiction "appear[ ] to be both attenuated and based on bare allegations in the face of specific denials made by the defendants," *Pebble Beach*, 453 F.3d at 1160, the Court need not grant discovery and DENIES the request. Finding that it lacks personal jurisdiction over any of the plaintiffs, the motions to dismiss are GRANTED.

This case likely belongs in Texas.  The judges moved in the alternative that the Court transfer the case to the Tyler Division of the United States District Court for the Eastern District of Texas.  Judges Br. 7.  No other party indicated whether he agreed.  The Court ORDERS that the plaintiff and non-judicial defendants file a brief of no more than three pages in length by February 13, 2014, discussing which venue in Texas is proper.  The defendants may file joint or separate briefs.  If Hudnall prefers that the matter be dismissed rather than transferred, he should make that preference clear in his brief.

**IT IS SO ORDERED.**

Dated: February 6, 2014



WILLIAM H. ORRICK  
United States District Judge